OPINION
{¶ 1} The State of Ohio appeals from the trial court's granting Appellee, Aaron Lamar Taylor's pre-trial suppression motion. The facts underlying this appeal are not in dispute; the trial court's legal conclusion is.
 {¶ 2} On February 18, 2006, at approximately 6:25 p.m., Officer Mark Ponichtera, a fourteen-year veteran of the Dayton Police Department, ran a routine license plate check of a vehicle he was following on West Third Street. (Tr. 4-5). The check revealed that the registered owner of the vehicle had a suspended driver's license. (Tr. 5). The driver and sole occupant of the vehicle matched the description of the registered owner, so Officer Ponichtera executed a traffic stop in the 1400 block of West Third Street to determine whether the driver was, in fact, the registered owner. (Tr. 5, 12). The 1400 block of West Third is basically a thoroughfare, but is within one-half to one mile of an area that is considered crime-ridden. (Tr. 7).
 {¶ 3} When the officer turned on his overhead lights to effect the stop, Taylor stopped abruptly in the middle of his lane of travel. (Tr. 5). Ponichtera then, using the public address system, told Taylor to pull his vehicle to the right and stop. Id. As Taylor did so, Ponichtera observed Taylor make an extraordinary amount of movements within the vehicle, one of which was distinctly to the right, as if he were reaching underneath the passenger's seat or towards the floorboard. (Tr. 5-7). Taylor also continued to travel a short distance as he pulled to the curb. (Tr. 6).
 {¶ 4} Once Taylor stopped the vehicle at the right curb, Officer Ponichtera approached, told Taylor why he had stopped him, and asked for his driver's license. (Tr. 6-8). The officer also asked Taylor to step out of the car. (Tr. 8). He did so because Taylor's peculiar actions in abruptly stopping his car in the middle of his lane of travel *Page 3 
and in moving around within the vehicle aroused Ponichtera's suspicions that Taylor may have been either trying to hide or retrieve a weapon. (Tr. 5-8, 12, 14-15). Officer Ponichtera testified he wanted to separate Taylor from the vehicle and check the validity of his license to make sure it was valid. Officer Ponichtera testified, "I'm going to have him step out and probably going to have him stand on the sidewalk while I check the validity of his license. I certainly want to separate him from the area that I'm suspicious of that. I don't want to go back and sit down in my vehicle if I suspect that there may be a weapon or some other implement in the car that could hurt me while I'm in my car running information." (Tr. 15) The driver's license revealed that Taylor was not, in fact, the registered owner of the vehicle. (Tr. 13).
 {¶ 5} When Taylor, who was wearing a very large, puffy coat, stepped out of the car, Ponichtera asked him if he had any weapons, to which Taylor responded no. (Tr. 8). Ponichtera then began to pat Taylor down. Id. As he did so, Taylor turned and tried to run. Id. Ponichtera, Lieutenant Randy Beane, and Sergeant Timothy Reboulet prevented Taylor's flight, and then discovered the crack cocaine and heroin on his person. (Tr. 8).
 {¶ 6} In granting the defendant's suppression motion, the trial court held that once officer Ponichtera determined that the defendant was not the registered owner of the vehicle, he had no reason to detain him further to check the validity of the defendant's operator's license. The court noted that the State presented no evidence that Taylor was driving an unregistered car or that he was subject to seizure for violation of the law.
 {¶ 7} The State argues that the trial court erred in granting the defendant's *Page 4 
motion because the circumstances presented to Officer Ponichtera justified his continued detention of Taylor. The State notes that Ponichtera's stated interest was more than to check Taylor's operator's license, it was also to pat Taylor down due to the suspicious movements he observed Taylor make. The State argues Ponichtera's pat down of Taylor was reasonable because of his concern that Taylor might be armed and dangerous to him and the other officers.
 {¶ 8} Taylor argues that the trial court properly granted his motion because Officer Ponichtera had no grounds to detain him once he determined he was not the registered owner of the vehicle.
 {¶ 9} A court measures the reasonableness of an officer's actions by reviewing the "totality of circumstances." State v. Robinette (1996),519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347; State v. Bobo (1988),37 Ohio St.3d 177, 179, 524 N.E.2d 489. A reviewing court must give due weight to the experience and training of the investigating officer, and view the evidence as it would be understood by those in law enforcement.State v. Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044. Furtive movements can provide an officer with the reasonable suspicion required to continue the detention because the potential of attack portrays possible criminal activity. State v. Sears, Montgomery App. No. 20859, 2005-Ohio-388, ]}27; State v. Clark, Montgomery App. No. 20902,2005-Ohio-3667, ¶ 17.
 {¶ 10} In Sears, a police officer stopped a vehicle after a license plate check revealed that the registered owner of the vehicle's operator's license had been suspended and the driver matched the registered owner's description. While examining the driver's license plate, the officer observed Sears, who was sitting in the back seat, *Page 5 
reach down to the floor with his left hand. The officer ordered Sears to show his hands and Sears did not comply with the request at first. After waiting for a back-up, the officer ordered Sears to exit the vehicle, and he conducted a pat-down frisk which revealed two spoons which later proved to contain cocaine. After arresting Sears, the officers discovered heroin and cocaine incident to his arrest. Sears argued in a motion to suppress that once the officers determined he was not the registered owner of the vehicle and that the driver had a valid driver's license, the continued detention of the vehicle and its occupant's was unlawful. In affirming the trial court's decision to overrule the pre-trial motion, Judge Grady wrote the following on behalf of this court:
 {¶ 11} "Defendant argues that Officer Neubauer was obligated to terminate the detention the moment he resolved his initial suspicions that the driver lacked operator's privileges. However, the record indicates that Defendant reached down toward the floor of the vehicle while Officer Neubauer was preoccupied with the driver, examining his license. Officer Neubauer could not see what was in Defendant's hand, and when Officer Neubauer ordered Defendant to show his hands Defendant did not immediately comply but rather had to be told repeated times to show his hands. Officer Neubauer's safety concerns that Defendant might be reaching for a weapon were reasonable and supported by specific, articulable facts. Accordingly, Officer Neubauer was justified in continuing the detention of this vehicle to investigate whether Defendant might be armed and dangerous, and in ordering Defendant to exit the vehicle, Pennsylvania v. Mimms (1977), 434 U.S. 106,54 L.Ed 2d 331, 98 S.Ct. 330, and patting him down for weapons. Terry v. Ohio,supra."
 {¶ 12} In State v. Clark (July 15, 2005), Mont. Ap. CA-20902, we reversed a trial *Page 6 
court's ruling that the pat down that revealed drug paraphernalia was improper because the justification for the warrantless stop of the vehicle had dissipated before the seizures occurred, when it was determined that neither of its female occupants could be the registered owner for whom the arrest warrant was outstanding. In reversing the trial court, Judge Grady wrote as follows:
 {¶ 13} "Deputy Baab testified that when he made the stop of their vehicle he saw both the driver and passenger reach down for the area of the floor, several times, in ways which in his experience had preceded his discovery of weapons and contraband inside the vehicle. This created concerns for his own safety that were reasonable, particularly in view of the late hour and the fact that, except for his dog, Storm, Deputy Baab was alone. Therefore, he was authorized to continue Defendant's detention to investigate those suspicions, even after the separate cause for the stop itself had dissipated. In finding otherwise, the trial court failed to give proper weight to the officer's training and experience, and to the reasonable inferences to be drawn from the facts and circumstances in light of his experience, and failed to view the evidence as it would be reasonably understood by those involved in law enforcement. Andrews, supra; State v. Phillips, 155 Ohio Ap.3d 149, 2003-5742, 799 N.E.2d 653."
 {¶ 14} It is difficult to distinguish this court's holding inClark from the facts presented to us in this matter. Although a close case, we believe the trial court was not sufficiently deferential to the safety concerns testified to by Officer Ponichtera. Accordingly, we find the trial court erred in finding that Ponichtera's pat down of Taylor was improper. The assignment of error is sustained. The judgment of the trial court is reversed and remanded for further proceedings. *Page 7 
WOLFF, P.J., concurs.