[Cite as *Large v. Heartland-Lansing of Bridgeport Ohio, L.L.C.*, 2013-Ohio-2877.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| EDWARD W. LARGE, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF MARY RUTH LARGE | ) ) ) | CASE NO. 12 BE 7 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| HEARTLAND-LANSING OF BRIDGEPORT OHIO, LLC, et al. | ) ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 10 CV 307

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Christopher J. Regan
Atty. Jeremy M. McGraw
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV 26003

For Defendant-Appellant: Atty. G. Brenda Coeyi
Buckingham Doolittle & Burroughs, LLP
4518 Fulton Road, NW
Canton, OH 44718

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: June 24, 2013

[Cite as *Large v. Heartland-Lansing of Bridgeport Ohio, L.L.C.*, 2013-Ohio-2877.]
WAITE, J.

{¶1} Appellee, Edward W. Large, filed a wrongful death suit over the death of his wife, Mary Ruth Large. The alleged cause of death was an infection resulting from pressure ulcers the deceased developed while in Appellant's care. Appellant, Heartland-Lansing, a nursing home, appeals the trial court's decision to allow discovery of a licensing report and survey materials generated by the Ohio Department of Health around the time the decedent was residing in the facility. This material collected by the Ohio Department of Health was to be provided to the facility itself, not the quality assurance committee specifically, in accordance with applicable state and federal law. Appellant contends that these materials are protected by the peer review privilege because Appellant's quality assurance committee may have analyzed them. Appellant also contends that licensing report documents are subject to an additional privilege under R.C. 3721.02(E)(1). Materials generated by the Ohio Department of Health and provided to a covered facility do not become privileged merely because they may have been analyzed by a peer review committee. No new privilege is created by R.C. 3721.02(E)(1). The trial court was correct in its determination that the material is discoverable. The judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} In July of 2009, Mary Ruth Large, the deceased, entered Heartland-Lansing as a patient. She died on October 10, 2009. She was survived by her husband, Appellee Edward W. Large, who was later appointed executor of her estate. The underlying suit was filed by Appellee, both in his individual capacity and

as executor. Appellee named Appellant and various employees in his suit, and alleged negligence or deliberate failure to exercise reasonable care with regard to the decedent, including: "failing to provide care * * * failing to follow [the] instructions of the plan of care * * * failing to take appropriate action to prevent infection; in failing to take appropriate action to prevent the development of pressure sores; * * * failing to provide adequate staffing; [and] in failing to properly train and supervise the persons responsible for failing to provide medical care to Mrs. Large." (6/30/10 Complaint, ¶11.)

{¶3} Answers were filed by various parties and an amended complaint was also filed. Discovery was undertaken by Appellee. Appellant complied with some of the discovery requests and the parties were able to resolve others. Disagreements over remaining questions were set for a hearing. The trial court's ruling can be broken into two parts. Part one involved discovery material that were to be set for an in-camera inspection before final determination was made as to their discoverability. This ruling was not appealed. Part two involves the court's decision as to the material relative to discovery requests numbered 20 and 36. Request number 20 sought "all complaint reports or surveys of resident opinion at the Heartland facility during the three years prior to October 10, 2009." Request number 36 sought "copies of any reviews that were conducted by HCFA (Health Care Financing Administration) or other governmental agencies at your facility from 2008 to 2009." (Appellant's Brf., pp. 3-4.) Appellant did identify as responsive to this request an Ohio Department of Health licensing report and survey documents, but claimed that these documents were privileged.

{¶4} The trial court held a telephonic hearing on October 20, 2011 concerning the discovery requests. On January 11, 2012, the trial court issued a decision ordering Appellant to comply with requests 20 and 36 and to produce the licensing report and survey materials. Appellant filed a timely appeal from this order.

Argument and Law

{¶5} Appellant identifies four assignments of error on the first page of its brief and presents five issues for review on the second. Appellant does not include or discuss the assignments of error in the body of the argument. Instead, Appellant's brief is organized around the five issues proposed for review. The first and second issues, as well as the first, third and fourth assignments of error, collectively argue that inspection reports prepared by the state department of health are privileged, that the trial court erred in ordering discovery of privileged material, and erred in finding that a statutory disclosure requirement waived the statutory privilege. These arguments will be considered together in an analysis as to the application R.C. 3721.02(E)(1) allegedly has to the material the trial court ordered Appellant to produce, under the heading of Appellant's first assignment of error.

{¶6} The remaining assignment of error and issue three challenge the trial court's decision to allow the discovery of family and patient complaint reports. The analysis of these arguments focuses on the trial court's decision pertaining to complaint reports and will be addressed under the heading of Appellant's second assignment of error.

{¶7} Resolution of the first, second and third assignments of error also resolve the various sub-issues raised by Appellant.

## ASSIGNMENT OF ERROR NO. 1

The trial court erred in ordering Heartland-Lansing to produce inspection reports prepared by the Ohio Department of Health.

## ASSIGNMENT OF ERROR NO. 3

The trial court erred when it ordered Heartland-Lansing to produce inspection reports prepared by the Ohio Department of Health and the family/patient complaint reports without first conducting an in-camera inspection of the documents.

## ASSIGNMENT OF ERROR NO. 4

The trial court erred in finding that the inspection reports prepared by the Ohio Department of Health and the family/patient complaint reports were relevant.

## Issues Presented for Review

I.  UNDER R.C. 3721.02, INSPECTION REPORTS OF A NURSING HOME THAT ARE PREPARED BY THE OHIO DEPARTMENT OF HEALTH "SHALL NOT BE USED IN ANY COURT IN ANY ACTION OR PROCEEDING * * *."  DID THE TRIAL COURT ERR IN ALLOWING PLAINTIFF-APPELLEE TO USE THOSE REPORTS THROUGH DISCOVERY IN PREPARING THEIR CASE AGAINST HEARTLAND-LANSING?

II. DID THE TRIAL COURT ERR IN CONCLUDING THAT HEARTLAND-LANSING WAIVED THE STATUTORY PRIVILEGES GOVERNING THE OHIO DEPARTMENT OF HEALTH INSPECTION REPORTS BY MAKING THE REPORTS AVAILABLE FOR INSPECTION BY PROSPECTIVE RESIDENTS OF THE NURSING HOME AS REQUIRED BY R.C. 3721.021.

IV. IS THE TRIAL COURT REQUIRED TO CONDUCT AN IN CAMERA INSPECTION OF PRIVILEGED DOCUMENTS BEFORE ORDERING THEIR DISCOVERY?

V. UNDER Civ.R. 26(B)(1), "[P]ARTIES MAY OBTAIN DISCOVERY REGARDING ANY MATTER, NOT PRIVILEGED, WHICH IS RELEVANT TO THE SUBJECT MATTER INVOLVED IN THE PENDING ACTION * * *." DID THE TRIAL COURT ERR IN FINDING THAT THE OHIO DEPARTMENT OF HEALTH INSPECTION REPORTS AND THE FAMILY/PATIENT COMPLAINT REPORTS WERE RELEVANT IN THIS MEDICAL NEGLIGENCE ACTION?

**{¶8}** Although Appellant identifies four assignments of error, its brief is instead structured in five sections headed by its issues presented for review. Again, due to the unusual organization of Appellant's brief, in this section we will address arguments raised under Appellant's first, third, and fourth assignments of error and Appellant's I, II, IV & V issues presented for review.

{¶9} Appellant argues that inspection reports prepared by the Ohio Department of Health are privileged pursuant to R.C. 3721.02(E)(1). Appellant further contends that the trial court's finding that it waived the privilege by making the information available as required by federal statute was error, and the order to produce the material was an abuse of discretion. We note that R.C. 3721.02(E)(1) was amended by Am.Sub.H.B. 487, effective September 10, 2012, and the relevant language now appears in 3721.02(F)(1). Although the language of new section (F)(1) is identical to the language of old section (E)(1), in our analysis we will use the pre-September 2012 version of the statute.

{¶10} Civil discovery of all relevant, unprivileged information is encouraged by "Ohio policy [which] favors the fullest opportunity to complete discovery." *Stegawski v. Cleveland Anesthesia Group, Inc.*, 37 Ohio App.3d 78, 85, 523 N.E.2d 902 (1987). Civ.R. 26(B)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * * It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The test for relevancy under Civ.R. 26 "is much broader than the test to be utilized at trial. It is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence." *State ex rel. Fisher v. Rose Chevrolet*, 82 Ohio App.3d 520, 523, 612 N.E.2d 782, 784 (1992), citing *Icenhower v. Icenhower*, Franklin App. No. 75AP-93 (10th Dist.1975).

**{¶11}** The trial court has inherent power to control discovery. Civ.R. 26(C); *State ex rel. Pfeiffer v. Common Pleas Court*, 13 Ohio St.2d 133, 235 N.E.2d 232 (1968); *State ex rel. Grandview Hosp. Ctr. v. Gorman*, 51 Ohio St.3d 94, 554 N.E.2d 1297 (1990). A trial court's decisions concerning discovery will not be disturbed on review absent an abuse of discretion. *State ex rel. The V Companies v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198, 200-201 (1998). Abuse of discretion connotes more than an error of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶12}** "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1252.

**{¶13}** While a discovery ruling is ordinarily examined for an abuse of discretion, the real issue in question here is the trial court's interpretation and application of R.C. 3721.02(E)(1). "[A]n appellate court considers an appeal from a trial court's interpretation and application of a statute de novo." *State v. Standen*, 173

Ohio App.3d 324, 328, 2007-Ohio-5477, 878 N.E.2d 657, ¶7. Hence, the meaning and application of R.C. 3721.02(E)(1) to the material before us comes to this Court *de novo*. *Compare, Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, ¶50 (holding that "the confidentiality of information pursuant to R.C. 2305.252 is one of law" to be reviewed *de novo*); also *Smith v. Manor Care of Canton Inc.*, 5th Dist. Nos. 2005-CA-00100, 2005-CA-00160, 2005-CA-00162, and 2005-CA-00174, 2006-Ohio-1182, ¶22, and *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769. The Supreme Court of Ohio has concluded that the issue of whether information sought under this statute is confidential and privileged from disclosure is a question of law that is to be reviewed *de novo*. *Med. Mut. of Ohio v. Schlotterer,* 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, at ¶13 and *Roe v. Planned Parenthood Southwest Ohio Region,* 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, ¶29. While interpretation and application of the relevant statute is conducted in a *de novo* review, any question concerning the propriety of the trial court's decisions as they relate to the facts of the matter before us is reviewed under an abuse of discretion standard. *Marshall, supra.*

### (A)  R.C. 3721.02(E)(1)

{¶14} Appellant argues that R.C. 3721.02(E)(1) confers a complete statutory privilege on inspection reports prepared by the Ohio Department of Health and, thus, that the documents ordered to be produced are not discoverable.

{¶15} Appellant's argument is a matter of first impression. No court in Ohio has found that a privilege exists based on this statute, and the language of the statute itself does not include the words "privilege" or "discovery."

**{¶16}** R.C. 3721.02(E)(1) provides:

Except as otherwise provided in this section, the results of an inspection or investigation of a home that is conducted under this section, including any statement of deficiencies and all findings and deficiencies cited in the statement on the basis of the inspection or investigation, shall be used solely to determine the home's compliance with this chapter or another chapter of the Revised Code in any action or proceeding other than an action commenced under division (I) of section 3721.17 of the Revised Code. Those results of an inspection or investigation that statement of deficiencies, and the findings and deficiencies cited in that statement shall not be used in any court or in any action or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding unless that action or proceeding is an appeal of an action by the department of health under this chapter or is an action by any department or agency of the state to enforce this chapter or another chapter of the Revised Code.

**{¶17}** Appellant contends that the language of the statute establishes a privilege protecting licensing reports from discovery. Both parties agree that the statute prevents the reports from being admitted at trial. Although the statute clearly states that these reports are inadmissible, the statute nevertheless allows the information to be used "in any action or proceeding" so long as it is used "solely to determine the home's compliance with this chapter or another chapter of the Revised Code." R.C. 3721.02(E)(1). The statute excludes grievance or complaint

proceedings under R.C. 3721.17 from "any action or proceeding," and then specifies that an inspection report "shall not be used in any court or in any action or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding." R.C. 3721.02(E)(1). It is unclear how a report could be used as evidence of compliance, but nevertheless be inadmissible. It is clear that the statute makes no mention of discovery or privilege.

**{¶18}** Appellant contends that this statute should be interpreted in the broadest possible sense and that a privilege is imputed in the phrase "shall not be used in any court or in any action or proceeding that is pending in any court." R.C. 3721.02(E)(1). Although no court has ruled on the meaning of the language in R.C. 3721.02(E)(1), the Ninth and Tenth District Courts of Appeals have interpreted this exact language, which also appears in R.C. 4141.21. On review of R.C. 4141.21, these districts have held that the language "does not confer a privilege; rather, it contains an evidence exclusion provision." *Pasanovic v. American General Finance, Inc.*, 10th Dist. No. 92AP-651, 1992 WL 229517, *2 (September 17, 1992); also *Daff v. Associated Bldg. Suppliers, Inc.*, 9th Dist. No. 23396, 2007-Ohio-3238; and *Curry v. Stumps*, 10th Dist. No. 80AP-146, 1980 WL 353675, *4 (September 9, 1980): "While the General Assembly in R.C. 4141.21 did make certain restrictions upon use of information supplied to the Ohio Bureau of Employment Services, it did not provide for an absolute privilege with respect thereto."

**{¶19}** No court has found that R.C. 3721.02, or the most analogous statute that contains identical language, R.C. 4141.21, creates a statutory privilege protecting inspection reports from discovery. When the legislature does create an

absolute privilege, it does so explicitly. Examples of absolute statutory privileges of the type Appellant claims R.C. 3721.02(E)(1) creates share common characteristics: they are unambiguously identified as privileges and they explicitly define how the privilege may be asserted or defeated. The best example of statutory language that creates a privilege is R.C. 2317.02. The statute is entitled "[p]rivileged communications" and addresses the attorney client, physician patient, counselor patient, and marital privileges. Each privilege is specifically identified as such and includes the various limitations and exceptions allowing disclosure when disputes arise out of the privileged relationship.

{¶20} Similarly, in the context of health care institutions, where the legislature has seen fit to make proceedings confidential and exempt information from discovery, it has done so unambiguously. R.C. 2305.252, titled "[c]onfidentiality of peer review committee proceedings and records," provides: "Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider." There are nevertheless, as is generally the case, exceptions to this exemption:

> Information, documents, or records otherwise available from original
> sources are not to be construed as being unavailable for discovery or
> for use in any civil action merely because they were produced or
> presented during proceedings of a peer review committee, but the
> information, documents, or records are available only from the original

sources and cannot be obtained from the peer review committee's proceedings or records.

R.C. 2305.252. Other statutes exempting material from discovery are equally direct. R.C. 3701.9311, titled "[e]xemption from subpoena or discovery; inadmissibility," provides: "Information, data, and records collected for use and maintained by, * * * the Ohio violent death reporting system shall not be subject to subpoena or discovery while in the possession of the system or admissible in any * * * civil proceeding."

{¶21} Not only does R.C. 3721.02(E)(1) omit any of the language the legislature uses to create a privilege or to forbid discovery, in the very next section of this statute the legislature requires that the exact information Appellant claims is privileged is to be made available to the public. R.C. 3721.021 provides:

Every person who operates a home * * * shall have available in the home for review by prospective patients and residents, their guardians, or other persons assisting in their placement, each inspection report completed pursuant to section 3721.02 * * * and each statement of deficiencies and plan of correction completed and made available to the public under Titles XVIII and XIX of the 'Social Security Act' * * * including such reports that result from life safety code and health inspections during the preceding three years, and shall post prominently within the home a notice of this requirement.

While statutory privileges frequently include exceptions, a survey of privilege statutes does not reveal any other instance in which material meets the requirements of a

statutory privilege but is simultaneously required by statute to be made available to the public at all times. Appellant has not provided any example of a privilege that operates in this manner, nor has Appellant identified any legal support for its arguments beyond its bald assertions that this Court should adopt Appellant's self-serving interpretation of the statute.

{¶22} Appellant's reliance on a 1930 decision from the Third District, *State ex rel. Justice v. Thomas*, 35 Ohio App. 250, 172 N.E. 397 (1930), which addresses principles of interpretation where portions of a statute conflict, is unfounded. There is no statutory conflict in this instance. *State ex rel. Jones v. Conrad*, 92 Ohio St.3d 389, 750 N.E.2d 583 (July 25, 2001). "In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended in * * * a particular statute—we rely only on what the General Assembly has actually said." (Citation omitted). *Id.* at 342. No conflict between statutes exists here and no additional analysis is necessary to give the plain language of the statute its plain meaning: that the material sought cannot be entered into evidence or used in court, but is nevertheless discoverable, because the General Assembly did not choose to explicitly restrict discovery or create a privilege.

{¶23} Materials that may be accessed in discovery are not limited to only admissible evidence. Civ.R. 26(B)(1) ("[i]t is not ground for objection that the information sought will be inadmissible at the trial."). Discovery encompasses "any matter, not privileged" and extends to the "existence, description, nature, custody, condition and location of any books, documents, electronically stored information, or other tangible things and the identity and location of persons having knowledge of

any discoverable matter" and will necessarily include a broad range of materials and information that are not otherwise admissible as evidence. Civ.R. 26(B)(1).

**{¶24}** R.C. 3721.02(E)(1) does not create a privilege. It is an exclusionary provision that prevents the admission of department of health licensing inspection reports into evidence in a trial. Licensing reports are discoverable, however, to the extent allowed by the Civil Rules; that is, where they are "relevant to the subject matter involved in the pending action" and appear "reasonably calculated to lead to the discovery of admissible evidence" despite the fact that they are not, themselves, admissible. Civ.R. 26(B)(1).

**{¶25}** Appellant also complains of the trial court's reference to R.C. 3721.021 as evidence that any privilege ostensibly created by R.C. 3721.021(E)(1) is destroyed, and contends that compelled disclosure does not destroy privilege. Appellant's argument would only be relevant if the material is privileged. As discussed, the language of the statute does not confer privilege. Because the material is not privileged, the trial court erred in finding that some privilege was destroyed by the disclosure required by R.C. 3721.01. This error in reasoning does not alter our determination that the court's order allowing discovery of the inspection materials was correct, albeit for other reasons.

## (B) Relevance

**{¶26}** In addition to arguments concerning privilege, Appellant also contends that the licensing report is not relevant to the subject matter of the action. Appellee has alleged negligence in the treatment of Mary Ruth Large, who is now deceased. Mrs. Large apparently died as a result of complications from pressure ulcers that are

alleged to have developed while she was in Appellant's care. In Appellant's fourth assignment of error, which appears in the body of its brief as the fifth issue for review, it contends that the trial court's decision to require production of the reports was erroneous because licensing reports are not sufficiently probative of negligence to establish liability.

{¶27} Appellant cites a variety of cases from several state courts outside of Ohio for the proposition that federal standards for licensing facilities or certifying them for participation in federal programs do not sufficiently establish the standard of care to determine that violations of those standards amounts to negligence *per se*. Appellant emphasizes in particular the lack of testimony from a medical expert in a Texas case in which the plaintiff's theory of recovery was negligence *per se* due to a state report that was specifically critical of the treatment the decedent received at the defendant facility. Using the Ohio negligence standard, which is the reasonable person standard, Appellant contends Appellee has pleaded the elements of negligence *per se*, and asserts that Ohio law does not mandate negligence *per se* for violations of R.C. 3721.

{¶28} Appellant's basic argument is that Appellee is not entitled to discovery material if that material, standing alone, cannot conclusively prove negligence. This argument can be seen as both tardy and premature, however. If, as Appellant contends, Appellee has filed a claim that has no hope of recovery on its face, Appellant's remedy was to file a Civ.R. 12(B)(6) motion, which should have been filed prior to any responsive pleading. While this argument may be intended to support a Civ.R. 12(B)(6) motion, it is not relevant to the discovery process and it is certainly

not properly before this Court in an appeal seeking relief from a discovery order. In this sense, Appellant's argument can be seen as tardy. However, Appellant seems to argue that Appellee has properly filed his complaint but the material he now seeks in discovery is not sufficient to prove Appellee's claims in court. This does not affect the relevancy of the materials sought, but instead focuses on the ultimate sufficiency of the evidence. Sufficiency of the evidence is an issue for the fact finder when making a final disposition of the case, not an issue for either a trial court or a reviewing court when ruling on discovery. The rules of discovery specifically allow, to a certain extent, a "fishing expedition." In this sense, Appellant's argument is premature.

**{¶29}** None of the arguments raised by Appellant identify either an error of law or an abuse of discretion in the trial court's decision to allow discovery of the inspection reports. Appellant is mistaking the issue of admissibility at trial for relevance in discovery. Relevance, in discovery terms, means only that the material sought "relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." Civ.R. 26(B)(1). The fact that the material may not be admissible at trial is not a bar to discovery. Civ.R. 26(B)(1) ("[i]t is not ground for objection that the information sought will be inadmissible at the trial.").

**{¶30}** Appellee has pleaded in his complaint the elements of multiple claims, including negligence. The trial court found that the condition of the facility prior to, during, and after the decedent's death is relevant to that claim. Appellant has not identified a defect in the trial court's reasoning as to the relevance of the conditions in the facility in this case. The trial court has further decided that licensing reports may

provide information concerning conditions in the facility that may lead to the discovery of relevant evidence concerning those conditions. Accordingly, the court ordered Appellant to produce the reports. Appellant has failed to raise any argument that actually addresses Civ.R. 26. No statutory or common law privilege applies to the disputed material. Because inspection reports from the Ohio Department of Health are not privileged, no in-camera inspection of the reports is necessary. In the absence of any privilege excluding the material and any indication of an abuse of discretion, Appellant's issues for review I, II, IV & V are without merit, and its first, third, and fourth assignments of error are overruled. The trial court's decision ordering the production of licensing inspection reports is affirmed.

ASSIGNMENT OF ERROR NO. 2

The trial court erred in ordering Heartland-Lansing to produce family/patient complaint reports.

Issue Presented for Review

III. UNDER R.C. 2305.24, "INFORMATION, DATA, REPORTS, OR RECORDS MADE AVAILABLE" TO HEARTLAND-LANSING'S QUALITY ASSURANCE COMMITTEE IS "CONFIDENTIAL AND SHALL BE USED BY THE COMMITTEE AND THE COMMITTEE MEMBERS ONLY IN THE EXERCISE OF THE PROPER FUNCTIONS OF THE COMMITTEE." DID THE TRIAL COURT ERR IN HOLDING THAT OHIO DEPARTMENT OF HEALTH INSPECTION REPORTS AND FAMILY/PATIENT COMPLAINT REPORTS, WHICH HAD BEEN

MADE AVAILABLE TO THE QUALITY ASSURANCE COMMITTEE, WERE DISCOVERABLE BY PLAINTIFF-APPELLEE IN THIS MEDICAL NEGLIGENCE ACTION?

{¶31} Appellant's second assignment of error purports to address only "family and/or patient complaint reports," however the body of Appellant's argument under its heading "III" contends that both Ohio Department of Health inspection reports and family/patient complaint reports should be protected from discovery by R.C. 2305.24 and R.C. 2305.252. With the exception of a brief quote from R.C. 2305.24, all of Appellant's substantive argument on the issue solely addresses R.C. 2305.252. The applicability of R.C. 2305.252 will be addressed in detail below. However, as a preliminary matter, R.C. 2305.24 pertains to a health facility's peer review committee. It charges members of a peer review committee with maintaining the integrity of personal medical information to the same degree a physician would be responsible for such information. The statute protects the privacy of the individuals to whom the information pertains, and requires committee members to protect and use the information appropriately:

> Any information, data, reports, or records made available to a quality assurance committee or utilization committee of a hospital or long-term care facility or of any not-for-profit health care corporation that is a member of the hospital or long-term care facility or of which the hospital or long-term care facility is a member are confidential and shall be used by the committee and the committee members only in the exercise of the proper functions of the committee. Any information, data, reports,

or records made available to a utilization committee of a state or local medical society composed of doctors of medicine or doctors of osteopathic medicine are confidential and shall be used by the committee and the committee members only in the exercise of the proper functions of the committee. A right of action similar to that a patient may have against an attending physician for misuse of information, data, reports, or records arising out of the physician-patient relationship shall accrue against a member of a quality assurance committee or utilization committee for misuse of any information, data, reports, or records furnished to the committee by an attending physician. No physician, institution, hospital, or long-term care facility furnishing information, data, reports, or records to a committee with respect to any patient examined or treated by the physician or confined in the institution, hospital, or long-term care facility shall, by reason of the furnishing, be deemed liable in damages to any person, or be held to answer for betrayal of a professional confidence within the meaning and intent of section 4731.22 of the Revised Code.

R.C. 2305.24.

{¶32} The confidentiality requirement of R.C. 2305.24 clarifies the responsibilities of physicians and committee members with regard to the information in its possession and establishes penalties for a breach of that duty. This is not the statute that creates what is commonly referred to as the "peer review privilege." This section does not create a privilege and does not address discovery. Appellee is not

seeking information directly from committee members. Because Appellant does not explain what application it believes the statute may have to this matter, and because the statute appears facially inapplicable, we will limit our analysis to Appellant's actual arguments, which address R.C. 2305.252. Appellant's misleading use of language from R.C. 2305.24 in its reply brief describes material that is confidential and that committee members may not disclose, but does not contain the language of the peer review privilege, which appears in R.C. 2305.252.

{¶33} A peer review committee, as defined by statute, is a committee within a hospital or other qualifying provider of health care that "[c]onducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers." R.C. 2305.25(E)(1)(a). The "peer review privilege" originates in R.C. 2305.252, which provides, "[p]roceedings and records within the scope of a peer review committee * * * shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or * * * provider * * * arising out of matters that are the subject of evaluation and review by the * * * committee." The provisions that allows records to be excluded under the peer review privilege also allows: "Information * * * otherwise available from original sources [is] not to be construed as being unavailable for discovery or for use in any civil action merely because [it was] produced or presented during proceedings of a peer review committee * * *." The statute clearly provides that such information is "available only from the original sources and cannot be obtained from the peer review committee's proceedings or records." Witnesses who "provide[ ] information to a peer review

committee * * * cannot be asked about the individual's testimony before the peer review committee, information the individual provided to the peer review committee, or any opinion the individual formed as a result of the peer review committee's activities." R.C. 2305.252.

{¶34} Various Ohio appellate courts have described the purpose of the statute as protecting the "the integrity of the peer-review process" to allow for "immediate" improvements in "the quality of health care" due to the particular need in the health care profession for "immediate remedial measures." *Gates v. Brewer*, 2 Ohio App.3d 347, 349, 442 N.E.2d 72 (10th Dist.1981) "we find that a legislator could rationally believe that by conferring a privilege from discovery upon the proceedings of a medical disciplinary committee the quality of public health care would increase * * * placing a blanket of confidentiality * * * has provided for a manner in which a hospital or medical association may take remedial measures for the improvement of the care and treatment of patients." Notwithstanding this stated purpose, "[t]he peer-review privilege is not a generalized cloak of secrecy over the entire peer-review process." *Giusti*, *supra*, at ¶14. "If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee." *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, ¶47.

{¶35} The records and proceedings of the peer review committee are not coextensive with all of the records of the facility in which the committee operates. The fact that copies of certain material may have been provided to a committee does not extend the protection afforded committee proceedings, and committee generated

records, to material generated outside of the committee. *Bansal v. Mt. Carmel Health Sys., Inc.*, 10th Dist. No. 09AP-351, 2009-Ohio-6845, ¶17, "* * * we conclude that documents sought from a health care entity are peer review records if the health care entity proves that those documents were created by and/or exclusively for a peer review committee. See, e.g. *Selby* at ¶15-25 (holding that EKG discrepancy reports were not privileged peer review documents because the health care entity used the reports for patient care, and not necessarily for peer review purposes)." "If a health care entity itself is the original source, it cannot shield documents from disclosure just by circulating them during peer review proceedings." *Id.* at ¶16, fn. 3.

**{¶36}** Where "information, documents, or records" are otherwise available from original sources, which may include the records of the facility itself, they "are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee." R.C. 2305.252, compare *Giusti, supra*, at ¶18: "Information that may be of a type that usually makes up a peer review committee file is not protected by R.C. 2305.252 just because it usually makes up a peer review committee file." The statute simply directs that documents, information, or records, which originate outside the peer review committee must be obtained "only from the original sources and cannot be obtained from the peer review committee's proceedings or records." R.C. 2305.252.

**{¶37}** The responsibilities of a party asserting a privilege are long established in the principles of Ohio law: privileges, "being in derogation of the common law, must be strictly construed." *Weis v. Weis*, 147 Ohio St. 416, 428, 72 N.E.2d 245

(1947). The party claiming privilege has the burden of proving that the privilege applies to the requested information. *Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976). The plain language of R.C. 2305.252 shields information from discovery and use at trial in "civil action[s] * * * arising out of matters that are the subject of evaluation and review by the * * * committee." R.C. 2305.252. A party claiming the peer review privilege, at "a bare minimum," must show that a peer review committee existed and that it actually investigated the incident. *Smith v. Manor Care of Canton Inc.*, 5th Dist. Nos. 2005-CA-00100, 2005-CA-00160, 2005-CA-00162, and 2005-CA-00174, 2006-Ohio-1182, ¶61.

{¶38} Appellant must, as the party asserting a privilege, satisfy its burden to demonstrate the existence of a privilege relevant to the documents it seeks to protect. In so doing Appellant "must provide evidence as to the specific documents requested, not generalities regarding the types of documents usually contained in a peer-review committee's records." *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶15 (8th Dist.). The steps Appellant must take were briefly outlined by the Ninth District Court of Appeals in *Ward v. Summa Health Care*, 184 Ohio App.3d 254, 2009-Ohio-4839, 920 N.E.2d 421 (9th Dist.) and begin with establishing that a peer review committee was in existence and that the facility actually investigated the incident or incidents that the disputed documents or information reference. A broad assertion that the committee may rely on a particular type of document or information, if the document was not generated by or under the direction of the committee, is insufficient. For the privilege to attach, the committee must have used or relied on the specific document or information the facility seeks to

exclude, and the particular document or information must not be something that is simultaneously available to employees of the facility in the course of their duties separate and apart from any peer review responsibilities. *Bansal*, *supra*.

**{¶39}** Appellant's apparent belief that the peer review privilege for documents maintained by a peer review committee extends to all documents maintained by a health care facility is incorrect. Documents that may be provided to a peer review committee, but were not originally prepared exclusively for the committee and are also accessible to staff of the facility in their capacities as employees or managers of the facility, separate and apart from any role on a review committee, are not in any way protected by the privilege. The privilege attaches only to the files maintained by and for the committee, not to all files in a facility. *Bansal*, *supra*; *Selby v. Fort Hamilton Hosp.*, 12th Dist. No. 2007-05-126, 2007-Ohio-2413.

**{¶40}** Although Appellant has provided an affidavit from its licensed nursing home administrator attesting to the existence of a quality assurance committee, Appellant has failed to identify what it terms "family/resident complaints" with anything approaching particularity. Appellant has similarly failed to identify any actual investigation of the incident or incidents that may be described in the material. Appellant suggests in its brief that "complaints" are used "during the normal and ordinary course of the committee's proceedings." (Appellant's Brf., p. 17.) However, the affidavit Appellant cites as the basis of its privilege claim contains no reference to "family/patient complaints." The affidavit instead states generally: "In the performance of its duties, the Quality Assurance Committee analyzed the following documents: Ohio Department of Health survey results, OSCAR reports, quality

indicator reports, and all other materials associated with the survey process." (DeAngelo Aff., ¶5.) More importantly, the affidavit offered by Appellant also clearly indicates that the material was not generated by or at the request of the committee. Appellee did not seek documents directly from any peer review committee. Appellant has failed to assert any peer review privilege with regard to the documents described as patient/family complaints. The affidavit intended to support privilege instead conclusively establishes that the documents were not generated by or under the direction of a committee whose activities are protected by the statutory privilege.

{¶41} Appellee contends, and Appellant does not dispute, that the complaints Appellant seeks to protect are survey documents generated by the Ohio Department of Health, apparently pursuant to R.C. 5111.39 and related provisions. Ohio code sections 5111.39, 3721.021 and 3721.022 all incorporate the relevant federal statutory and regulatory law concerning surveys:

> The department shall conduct surveys in accordance with the regulations, guidelines, and procedures issued by the United States secretary of health and human services under Titles XVIII and XIX of the 'Social Security Act,' 49 Stat. 620 (1935), 42 U.S.C.A. 301, as amended, sections 5111.40 to 5111.42 of the Revised Code, and rules adopted under section 3721.022 of the Revised Code.

R.C. 5111.39(C). Assuming arguendo that the documents Appellant now seeks to protect were collected by the state during the survey process, they were required to be provided directly to the director of the facility, not to the peer review panel. 42 CFR 488.325. In addition to providing the materials to the covered facility, the state

and the Centers for Medicare and Medicaid Services ("CMS") make these materials available to the public fourteen days after providing them to the facility:

> The disclosing agency must make available to the public, upon the public's request, information concerning all surveys and certifications * * * including statements of deficiencies, separate listings of any isolated deficiencies that constitute no actual harm, with the potential for minimal harm, and plans of correction (which contain any provider response to the deficiency statement) within 14 calendar days after each item is made available to the facility.

42 CFR 488.325(d). Any suggestion of a chilling effect or the need for confidentiality to attach to survey documents as a policy concern is illusory. The United States Code sections applicable to survey documents and complaint reports further demonstrate the broad nature of the disclosure requirements placed on the exact material Appellant seeks to exclude:

> (C) Availability of survey, certification, and complaint investigation reports -- A nursing facility must -
>
> (i) have reports with respect to any surveys, certifications, and complaint investigations made respecting the facility during the 3 preceding years available for any individual to review upon request;

42 USC 1396r(d)(1)(V) [sic] (Pub. L. 111-148, Title VI, §6101). The clear intent of the federal law controlling the survey process is openness. This information is legally required to be publicly available from multiple sources including the facility itself. No

peer review privilege attaches to documents generated by the state during the survey process because they are not generated by or for the committee. The facility, which is required by law to be provided with survey results, may be required to produce these documents in discovery without disturbing the confidentiality that attaches to peer review proceedings and records. The documents in no way reflect the decision making process of the committee and are provided to the facility itself for use by employees, separate and apart from any committee responsibility.

{¶42} Appellant's reliance on *Huntsman*, *supra*, is misplaced. While Appellant does accurately quote the principles espoused by the *Huntsman* court, Appellant's attempt to apply the logic of that decision to the material at issue here is misleading. In *Huntsman*, the trial court, applying a prior version of the peer review privilege statute, ordered the health care facility to produce a list of the documents contained in a physician's credentialing file that were available from original sources. The Fifth District found that the statute prohibited any disclosure of the contents of the credentialing file compiled by the peer review committee, and that the trial court could not compel the facility to compile a list of the documents included in the credentialing file.

{¶43} *Huntsman* stands for the proposition that the statute prevents a court from requiring a facility to provide a list of documents that could be found from other, original sources, utilizing a peer review committee document to do so. In other words, a facility cannot be forced to divulge the information contained in a peer review committee file. In the matter before us the trial court did not compel any disclosure of Appellant's peer review files. Instead it was Appellant who voluntarily

disclosed the fact that its quality assurance committee may have analyzed material Appellee sought; material sought not from the committee, but directly from the facility, itself. Survey materials may not be obtained directly from the records of the committee, but it is clear these same documents are available in the facility from other sources. As Appellee suggested during oral argument, documents that are otherwise discoverable do not become privileged merely because they have been dipped in the waters of a peer review committee file. So long as Appellee does not seek these documents directly from the committee, or seek any committee work product involving the documents, Appellee is entitled to discovery of the documents.

**{¶44}** Appellant is similarly mistaken in identifying *Tenan v. Huston*, 165 Ohio App.3d 185, 2006-Ohio-131, 845 N.E.2d 549 (11th Dist.) and *Hammond v. Ruf*, 9th Dist. No. 22109, 2004-Ohio-6273 in support of the proposition that documents produced by a state agency are privileged because copies of the documents have been provided to a quality assurance committee. In both *Ruf* and *Tenan* a party sought discovery of information from a physician's credentialing file and the trial court erroneously applied the prior version of the statute to allow disclosure from the file itself. In both cases the reviewing court found that the applicable version of the statute precluded the production of material directly from the privileged file. While it is true that material contained in the file is privileged, and that a facility cannot be compelled to reveal the contents of the file, material that a facility obtained and possesses separate and apart from committee proceedings is not privileged. If Appellant is asserting it has transferred all copies of these documents to committee files and no longer possesses them in the facility separately from committee files, it

has done so to no avail, as it is required to keep these on file and may not in this fashion prevent public access or to thwart discovery in this matter.

**{¶45}** Appellant's arguments concerning the quality of information provided to a quality assurance committee, or to state employees, have no logical application to these documents which are already required to be made public. Appellant's citations to decisions from various states interpreting their own statutes offers no insight into the motivations of the Ohio legislature or the language of Ohio statutes. Appellant's contention that facilities should be able to conceal the results of state surveys and complaints is refuted by the clear policy of openness espoused by federal and state disclosure laws.

**{¶46}** Appellant has failed to properly invoke the peer review privilege with regard to any complaint reports included in survey materials collected by the Ohio Department of Health. The results of surveys conducted by the Ohio Department of Health pursuant to state and federal obligations are not subject to the peer review privilege and are discoverable from other files of a covered facility. Appellant's third issue for review is without merit and Appellant's second assignment of error is overruled.

Conclusion

**{¶47}** Ohio Department of Health inspection reports are not privileged. Ohio Health Department survey documents produced pursuant to federal and state law do not directly reflect the operations of a quality assurance committee. The documents are not subject to the peer review privilege. Even if copies of the surveys have been analyzed by a quality assurance committee, a facility may be compelled to produce

them. Documents in a heath care facility's files that are provided to and accessible by employees or used by the facility and its employees in the course of operations do not become privileged simply when copies are provided to a quality assurance committee. Documents provided to and used by employees of a facility separate and apart from any duties for a peer review or quality assurance committee member are discoverable from the facility to the extent that they are not subject to any other properly invoked privilege. The judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.