[Cite as *Bailey v. Manor Care of Mayfield Hts.*, 2013-Ohio-4927.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99798

---

# JENNIE BAILEY, ADMINISTRATOR

### PLAINTIFF-APPELLEE

### vs.

# MANOR CARE OF MAYFIELD HTS. ETC., ET AL.

### DEFENDANTS-APPELLANTS

---

### JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART,
### AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-792974

**BEFORE:** Jones, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** November 7, 2013

**ATTORNEYS FOR APPELLANT**

Beth A. Nagel
Justin S. Greenfelder
Dirk E. Riemenschneider
Timothy A. Spirko
Buckingham, Doolittle & Burroughs, L.L.P.
1375 East Ninth Street
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Martin S. Delahunty, III
Richard V. Zurz
Slater & Zurz, L.L.P.
One Cascade Plaza
Suite 2210
Akron, Ohio 44308

LARRY A. JONES, SR., J.:

**{¶1}** Defendant-appellant, Manor Care of Mayfield Heights, Ohio ("Manor Care"), appeals the trial court's ruling granting plaintiff-appellee's, Jennie Bailey, Administrator of the Estate of Dionne Dennard ("the Estate"), motion to compel and denying Manor Care's motion for protective order. We affirm in part, reverse in part, and remand.

## I. Procedural History

**{¶2}** In 2012, Bailey filed a complaint against Manor Care, ManorCare Health Services, and various John Does alleging negligence and/or negligence per se, violation of statutory rights, and wrongful death. The complaint alleged that Dionne Dennard was a resident of Manor Care in November 2011. On November 12, 2011, due to Dennard's failing health and at her family's insistence, she was transferred to a hospital. Dennard died at the hospital on November 16, 2011. The complaint alleged that Manor Care failed to provide adequate medical, nursing, and health care to Dennard causing her mental, physical, and emotional pain, and ultimately her death.

**{¶3}** Manor Care answered the complaint on October 29, 2012, generally denying the allegations. The trial court set the case for a case management conference and, at the conference, issued standing orders governing the management, procedure, and scheduled dates for the case.

**{¶4}** On December 7, 2012, Manor Care moved for an extension to respond to the Estate's interrogatories, productions of documents, and request for admissions. The trial court granted the motion, giving Manor Care leave until January 7, 2013.

**{¶5}** On January 10, 2013, the Estate filed a notice of voluntary dismissal,

dismissing its claims against defendant ManorCare Health Services only. On March 13, 2013, the parties filed a joint motion to continue the trial date and discovery deadlines, claiming that both parties needed more time to prepare for trial and take depositions. The trial court denied the motion and set a pretrial for March 19, 2013. After the pretrial, the court extended the non-expert discovery deadline to May 31, 2013, and the settlement conference to June 10, 2013, but ordered that all other deadlines were to remain in effect.

{¶6} On April 9, 2013, the Estate moved to compel the production of documents. In its motion, the Estate alleged that it had learned during the March 25, 2013 deposition of Saundra Brown, Manor Care's director of nursing, that there was an investigation "to determine if there was harm to the resident" after Dennard's death. The investigation included taking written witness statements from Manor Care employees. The Estate argued that Manor Care should have produced the investigatory file subject to its request for productions of documents and further, that if Manor Care claimed that the documents were privileged, it had a duty to identify those documents that were being withheld under a privilege argument, and had failed to do so. The Estate argued that federal law preempted state law; therefore, the documents pertaining to Dennard were subject to discovery. The Estate moved to compel Manor Care to produce the documents associated with the investigation along with attorney fees associated with the motion.

{¶7} Manor Care moved for leave to respond to the motion to compel. The trial court denied its motion at first, but then granted the motion. In granting Manor Care's motion for leave, the trial court noted that

Manor Care did not timely respond to discovery requests, did not move for an extension and did not file for a protective order. The court will rule on the [motion to compel] and the response is due by noon on 4/6/13.

{¶8} Manor Care timely filed its brief in opposition and motion for protective order, arguing that the requested materials were privileged and protected by the attorney-client and work-product privileges and by the peer- review and quality assurance privileges. Manor Care further asserted that federal law does not preempt Ohio's "Peer Review Privilege" law. In support of its position, Manor Care submitted the affidavit of Manor Care's assistant administrator Marie Thur. Thur averred that she had personal and professional knowledge of all aspects of the reporting and investigation performed pertaining to Dennard. She also averred that "Quality Assurance Committee investigations and all related documents and investigative information are intended by Manor Care as peer review and legal work product documents as defined by Ohio law." Thur further averred that

> any and all Quality Assurance investigation reports, including but not limited to investigative information pertaining to Dionne Dennard as a result of her residency at Manor Care were prepared and performed within the scope and function of the Quality Assurance Committee at Manor Care.

{¶9} On April 17, 2013, the trial court granted the Estate's motion to compel. The court's order stated:

> The court has read and reviewed the motion to compel and brief in opposition, and finds the plaintiff's motion well-taken. Therefore the motion to compel is granted and the defendant is ordered to provide all requested documents to the plaintiff on or before noon on 4/19/13, with

verification to the court of compliance with this order. The court also notes for the record that in addition to not producing the records pursuant to the time parameters of the civil rule, the defendant did not seek a protective order upon receipt of the production request.

## II. Law and Analysis

{¶10} Manor Care timely filed its notice of appeal and now raises the following assignment of error for our review:

I. The trial court erred in granting Plaintiff-Appellee's motion to compel production of investigation and incident reports and denying Defendant-Appellant's motion for protective order.

{¶11} A trial court's order compelling the production of allegedly privileged documents to an opposing party is a final appealable order. *Pinnix v. Marc Glassman, Inc.*, 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, ¶ 8, citing *Cobb v. Shipman*, 11th Dist. Trumbull No. 2011-T-0049, 2012-Ohio-1676, ¶ 34-35; R.C. 2505.02(A)(3) and 2505.02(B)(4). When a discovery issue involves an alleged privilege, it is a question of law that we review de novo. *Pinnix* at *id.* citing *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13.

### A. Federal Preemption

{¶12} The Estate argues that the trial court correctly found that federal law governing the rights of nursing home residents preempts Ohio law with regard to privileged or non-discoverable documents. As an initial matter, we note that the trial

court did not state its reasoning behind the decision to grant the Estate's motion to compel; therefore, it is unclear whether the trial court found that federal law preempts state law in regard to this issue. But whether federal law preempts state law is a question of law; accordingly, we apply a de novo standard of review without deference to the trial court's decision. *Norfolk S. Ry. Co. v. Bogle*, 166 Ohio App.3d 449, 2006-Ohio-1540, 850 N.E.2d 1281, ¶ 6 (8th Dist.), *overruled on other grounds*, *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919.

{¶13} In *Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, 811 N.E.2d 1117, the Ohio Supreme Court considered federal preemption of state law, giving three controlling principles:

> (1) the critical question is whether Congress intended state law to be superseded by federal law — the historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress, (2) a presumption exists against preemption of state police-power regulations, and (3) federal law preempts state law where Congress has occupied the entire field
> * * *.

*Id.* at ¶ 27, citing *Minton v. Honda of Am. Mfg., Inc.*, 80 Ohio St.3d 62, 684 N.E.2d 648 (1997).

{¶14} In arguing that it should be granted full access to the investigatory file on Dennard, the Estate relies on 42 C.F.R. 483.10, which concerns the rights of residents of long-term-care facilities, such as Manor Care. 42 C.F.R. 483.10(A)(2)(i) provides that "[t]he resident or his or her legal representative has the right * * * upon an oral or written request, to access all records pertaining to himself or herself including current clinical

records within 24 hours."

{¶15} Manor Care relies on Ohio's Peer Review Privilege statutes in arguing that the file is privileged. R.C. 2305.25 et seq.

{¶16} To begin our analysis, we note that both state and federal law require peer review, also known as quality assurance or quality assessment committees. Federal law provides for a quality assessment committee under 42 U.S.C. 1396r. 42 U.S.C. 1396r(c)(1)(a)(iv) states:

> Confidentiality. The right to confidentiality of personal and clinical records and to access to current clinical records of the resident upon request by the resident or the resident's legal representative, within 24 hours * * * after making such a request.

But 42 U.S.C. 1396r(b)(1)(B) provides:

> Quality assessment and assurance. A nursing facility must maintain a quality assessment and assurance committee * * *. A State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph.

{¶17} Courts have interpreted 42 U.S.C. 1396r to mean that records created or generated for quality assurance purposes at nursing homes are protected from discovery. *See Park Assocs. v. N.Y. State Atty. Gen. (In re Subpoena Duces Tecum to Jane Doe)*, 99 N.Y.2d 434, 787 N.E.2d 618, 757 N.Y.S.2d 507 (2003), paragraph two of the syllabus (federal statute restricts quality assurance records and encompasses any reports generated by or at the behest of a quality assurance committee for quality assurance purposes).[1]

---

[1] *Compare Jewish Home v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359 (3d Cir. 2011) (holding that under 42 U.S.C. 1396r, routinely-generated incident reports were part of residents'

Therefore, it can be argued that while federal law guarantees a resident the right to access his or her medical records, the law also clearly contemplates some privilege.

**{¶18}** More importantly, federal courts have applied Ohio law to issues of discovery that fall within the peer review privilege statute. In *Freudeman v. Landing of Canton*, N.D.Ohio No. 5:09-CV-00175, 2010 U.S. Dist. LEXIS 55273 (May 31, 2010), the district court found that

> Rule 501 of the Federal Rules of Evidence instructs that the determination of whether a privilege protects certain information from disclosure is to be made in accordance with the State law that provides the rule of decision as to an element of a claim or defense.

*Id.* at *6. Since the case involved issues of state law, the application of privilege was governed by Ohio's peer review privilege statutes. *Id.* at *7; *see also Cleveland Clinic Health Sys. - E. Region v. Innovative Placements, Inc.*, 283 F.R.D. 362, 365 (N.D.Ohio 2012) (finding that Ohio law governs peer review privilege regarding a claim or defense for which state law supplies the rule of decision.).

**{¶19}** In light of the above, we decline to find that federal law preempts the state statutes governing peer review privilege.

### B. Peer Review Committee

**{¶20}** A peer review committee is defined in R.C. 2305.25(E)(1) as follows:

> "Peer review committee" means a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of

---

medical records and were not minutes, internal papers, or conclusions generated by Quality Assurance Committee and were not subject to disclosure restrictions).

the following:

(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;

(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions.

{¶21} Prior to April 2003, plaintiffs had a qualified right pursuant to Ohio law to information contained within peer review committee files. On April 9, 2003, the Ohio legislature revised the statutory framework. R.C. 2305.252 now states that

[p]roceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider * * *.

The statute also provides that individuals who attend, provide information to, or serve on peer review committee meetings are not required to testify in a civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee. *Id.* The change in law "manifest[ed] the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings." *Tenan v. Huston*, 165 Ohio App.3d 185, 190, 2006-Ohio-131, 845 N.E.2d 549, ¶ 23 (11th Dist.).

{¶22} R.C. 2305.253(A) provides that

an incident report or risk management report and the contents of an incident report or risk management report are not subject to discovery in, and are not admissible in evidence in the trial of, a tort action.

The statute further provides that

> [a]n individual who prepares or has knowledge of the contents of an incident report or risk management report shall not testify and shall not be required to testify in a tort action as to the contents of the report.

*Id.*

**{¶23}** Notwithstanding the restrictiveness of these statutes, Ohio courts have held that "[t]he peer-review privilege is not a generalized cloak of secrecy over the entire peer-review process." *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769, ¶14 (9th Dist.).

> If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital [or other qualifying health care entity] could never be held accountable for any negligent act within the purview of the committee.

*Huntsman v. Aultman Hosp.*, 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, ¶47.

**{¶24}** In fact, R.C. 2305.252 expressly provides that restrictions on discovery are not absolute:

> Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.

 "The fact that copies of certain material may have been provided to a committee does not extend the protection afforded committee proceedings, and committee generated records, to material generated outside of the committee." *Bansal v. Mt. Carmel Health Sys., Inc.,* 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶17 (finding that documents sought

from a health care entity are peer review records if the health care entity proves that those documents were created by and/or exclusively for a peer review committee).

## C. Asserting the Peer Review Privilege

{¶25} Civ.R. 26(B)(1) prohibits the discovery of privileged documents. The party claiming privilege has the burden of proving that the privilege applies to the requested information. *Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976). Thus, in claiming privilege, a party must satisfy its burden to demonstrate the existence of a privilege relevant to the documents it seeks to protect.

{¶26} At a bare minimum, the party must show that a peer review committee existed and that it actually investigated the incident. *Smith v. Manor Care of Canton Inc.*, 5th Dist. Stark Nos. 2005-CA-00100, 2005-CA-00160, 2005-CA-00162, and 2005-CA-00174, 2006-Ohio-1182, ¶ 61. The party seeking privilege must also establish that the documents being sought were prepared by or for the use of a peer review committee. *See Rinaldi v. City View Nursing & Rehab. Ctr., Inc.*, 8th Dist. Cuyahoga No. 85867, 2005-Ohio-6360, ¶ 20. Stated another way, the party seeking privilege is required to show that each of the documents over which it asserts the privilege is a "record within the scope of a peer review committee." *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 15 (8th Dist.). In so doing, the party seeking privilege "must provide evidence as to the specific documents requested, not generalities regarding the types of documents usually contained in a peer-review committee's records." *Id.*

**{¶27}** Additionally, while material contained in the file is privileged, and a facility cannot be compelled to reveal the contents of the file, material that a facility obtained and possesses separate and apart from committee proceedings is not privileged. *Large v. Heartland-Lansing of Bridgeport Ohio, LLC*, 7th Dist. Belmont No. 12 BE 7, 2013-Ohio-2877, ¶ 44.

**{¶28}** Based on this, the party seeking privilege must begin with establishing that a peer review committee was in existence and that the facility actually investigated the incident or incidents that the disputed documents or information reference. The party must also show that each of the documents over which it asserts privilege is a record within the scope of the committee and provide evidence as to the specific documents requested over which it asserts the privilege. Again, documents that may be provided to its peer review committee, but were not originally prepared exclusively for the committee are not protected by the privilege; the privilege attaches only to the files for the committee, not to all files in a facility. *Bansal*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶ 17; *Selby v. Fort Hamilton Hosp.*, 12th Dist. Butler No. 2007-05-126, 2008-Ohio-2413.

**{¶29}** As part of its discovery request, the Estate claims it requested disclosure of "any and all documents pertaining to Dionne Dennard" and specifically requested that "Defendant identify any documents existing but being withheld under a privilege argument." In its response to the Estate's motion to compel, Thur averred that Manor Care's Quality Assurance Committee analyzed the following documents: Ohio Department of Health survey results, OSCAR reports, quality indicator reports, "all other

materials associated with the survey process," and all incidents reports and investigations arising out of Dennard's care.[2]   Thur further stated that

> any and all Quality Assurance investigation reports, including but not limited to investigative information pertaining to Dionne Dennard as a result of her residency at Manor Care were prepared and performed within the scope and function of the Quality Assurance Committee at Manor Care.

{¶30} In Saundra Brown's deposition testimony, which the Estate did not file with the court but attached to its motion to compel, the Estate also attempted to inquire about, and requested copies of, Manor Care's guidelines "with respect to when a nurse needs to perform an assessment on a patient," guidelines on physician notification, guidelines on charting, and the nursing assistants' computerized records of care for Dennard.   We are unaware, however, if a request for these documents was made in Estate's request for interrogatories and production of documents because it was not filed with the trial court.

{¶31}   Thus, we are able to identify additional documents that the Estate may be requesting beyond those that are identified in Thur's affidavit, which may or may not be part of the investigatory file.

{¶32} In arguing that the entire contents of Manor Care's investigatory file should

---

[2]  R.C. 2305.25(D) defines an "incident report or risk management report" as:
> [A] report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers, including both individuals who provide health care and entities that provide health care, that is prepared by or for the use of a peer review committee of a health care entity and is within the scope of the functions of that committee.

be subject to discovery, the Estate relies on *Smith,* 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, where this court found that a treating physician's conversation with the decedent's family was not protected by the peer review privilege. The Estate contends that we should rely on *Smith* in finding that Thur's affidavit was insufficient to establish that a peer review committee reviewed Dennard's case or that the "documents themselves were actually generated in association with a peer review committee meeting."

{¶33} *Smith* is distinguishable from this case. In *Smith*, the treating physician met with the decedent's family members after the decedent experienced a heart attack following an elective knee surgery. The doctor specifically told the family that the peer review process had not yet begun but he intended to share the results of any proceedings. When the plaintiffs attempted to depose the doctor, the hospital moved for a protective order, arguing that any information the doctor shared with the decedent's family was protected under the peer review privilege. The trial court denied the motion, finding that it was unclear whether the doctor's "root cause analysis" meeting with Smith's family fell under the definition of a peer review committee. *Id.* at ¶ 5.

{¶34} This court affirmed the trial court's ruling, finding that (1) the doctor had specifically informed the family during the root cause analysis meeting that the peer review committee process had not yet begun and (2) the doctor's affidavit failed to provide sufficient proof that a peer review committee existed and that the committee reviewed the decedent's case. *Id.* at ¶ 21, 24.

**{¶35}** In this case, Thur's affidavit showed both the existence of a quality assurance committee at Manor Care that was operational in November 2011 and that the committee had reviewed Dennard's case. Manor Care's response to the motion to compel/motion for a protective order is lacking, however, in that it does not specify those documents over which Manor Care asserts privilege nor explain why privilege exists as to the documents.

### C.   In Camera Inspection

**{¶36}** Again, the Estate stated that it requested all documents associated with the "investigation into the injury and death of Dionne Dennard." Then, during Brown's deposition, the Estate requested further records. And in its affidavit, Manor Care set forth additional documents that its quality assurance committee looked at, some of which may not be covered by the peer review privilege. *See, e.g.*, *Large*, 7th Dist. Belmont No. 12 BE 7, 2013-Ohio-2877 (holding that Ohio Health Department survey documents produced pursuant to federal and state law do not directly reflect the operations of a quality assurance committee; therefore, they are not subject to the peer review privilege and are discoverable).

**{¶37}** We find that whether or not the requested records fall within the purview of the peer review privilege is a decision best determined by an in camera review of the documents the Estate is requesting and over which Manor Care is asserting privilege.

**{¶38}** In order to effectuate the trial court's in camera inspection, the court may order Manor Care to produce a privilege log. We find the decision in *Innovative Placements, Inc.*, 283 F.R.D. 362, to be instructive on this matter. In *Innovative*

*Placements*, the district court ordered the plaintiffs to:

> (1) produce a privilege log that included sufficient descriptive information about the allegedly privileged documents; (2) file a motion for a protective order explaining why each privilege applied to each document; and (3) deliver to the Magistrate Judge's chambers, in a sealed envelope and for in camera inspection if necessary, un-redacted and redacted copies of the documents over which Plaintiffs claimed privilege.

*Id.* at 364.

{¶39} Manor Care argues that no obligation exists to produce a privilege log and that any such order would violate the intention of the peer review privilege statutes. We disagree. The burden is on Manor Care to show evidence of each document over which it is asserting privilege and why privilege should attach. *Smith*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 15. Therefore, the advisable practice would be for Manor Care to submit the requested records along with a privilege log to the trial court for an in camera review. *See Moore v. Ferguson*, 5th Dist. Richland No. 12CA58, 2012-Ohio-6087 (holding that the trial court erred in not conducting an in camera inspection of the records before ordering them to be disclosed and recommending appellant submit a privilege log.). The preparation of a privilege log will place the onus back on Manor Care, as is its burden, to demonstrate which of the records are subject to the peer review privilege. *See Moore* at ¶ 36.

{¶40} In the case at bar, it is not clear on the face of the disputed discovery requests that all of the documents requested by the Estate are subject to the peer review privilege. While Manor Care has the burden of proving that the documents in the investigatory file were privileged, the trial court erred by rendering its decision granting the motion to

compel the documents without requiring Manor Care to submit the disputed documents for an in camera inspection. *See Bansal*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶ 18.

**{¶41}** Thus, we conclude that based on the evidence before it and given the lack of an in camera inspection of the documents, the trial court could not conclude as a matter of law that investigation reports were not subject to privilege, under either R.C. 2305.252 or 2305.253. *See Ward,* 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, at ¶ 17.

**{¶42}** We note that this holding is specific to the facts of this case. Here, it appears as though the Estate made a blanket demand for any and all records that had anything to do with Dennard's care, including the investigation into whether she was "harmed," and Manor Care replied with a blanket assertion of privilege as to just about every document in its possession (again, we are guessing here since the request for interrogatories and production of documents and the response were not ordered to be made part of the trial court record). The trial court then granted the Estate's motion, without consideration of the actual documents and whether each one falls under the peer review privilege.

**{¶43}** The trial court is ordered to conduct an in camera review. To effectuate this review, the court may order: (1) the Estate to file a copy of the interrogatories and request for production of documents that it propounded on Manor Care; (2) Manor Care to file a copy of its response, and (3) order Manor Care to file a detailed privilege log with the court. The court will then be in the position to determine what documents were sought

by the Estate, which of those documents Manor Care asserts privilege over, and whether those documents are non-discoverable.

**{¶44}** The sole assignment of error is sustained and the case is remanded for proceedings consistent with this opinion.

It is ordered that appellants and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR