[Cite as *Howell v. Park E. Care & Rehab.*, 2018-Ohio-2054.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106041**

**DAVID HOWELL, JR., ETC.**

PLAINTIFF-APPELLEE

vs.

**PARK EAST CARE & REHABILITATION, ET AL.**

DEFENDANTS-APPELLANTS

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-876418

**BEFORE:** Blackmon, J., E.T. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 24, 2018

**ATTORNEYS FOR APPELLANTS**

Martin T. Galvin
Brian D. Sullivan
Erin Siebenhar Hess
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEE**

Blake A. Dickson
Danielle Chaffin
The Dickson Firm, L.L.C.
Enterprise Place, Suite 420
3401 Enterprise Parkway
Beachwood, Ohio 44122


PATRICIA ANN BLACKMON, J.:

{¶1} Defendants-appellants, Harborside of Cleveland Limited Partnership d.b.a. Park East Care & Rehabilitation, and its owners and operators (collectively "Park East"), appeal from the trial court's decision that denied their motion for a protective order and compelled them to provide discovery of records pertaining to a nursing home resident who allegedly assaulted decedent, Pauline Wilbourn ("Wilbourn"), mother of plaintiff-appellee, David Howell ("Howell"). Park East assigns the following errors for our review:

> I. The trial court erred by ordering production of privileged medical records pertaining to a nonparty to the litigation, which party refused to consent to such disclosure.

II.  The trial court erred by ordering production of statutorily privileged incident reports, reports to the Ohio Department of Health, and a nonparty patient's billing records as these items are each statutorily immune from discovery.

{¶2}   Having reviewed the record and pertinent law, we reverse and remand in order for the trial court to conduct an in camera review of the disputed documents in order to ensure that they are not protected by a privilege or are otherwise undiscoverable.   The apposite facts follow.

{¶3} On February 23, 2017, Howell filed suit against Park East, alleging that while Wilbourn was a resident of Park East, she was assaulted by a fellow resident, L.W., and died from her injuries.[1]  Howell alleged that the actions or omissions of Park East were negligent, reckless, wanton and wilful, and substantially certain to cause harm to Wilbourn.

{¶4}   L.W. is deceased, and his estate is not a party to this action.   It is undisputed that his estate has refused to consent to production of his records at Park East.

{¶5}   Howell propounded extensive discovery requests to Park East.   As is relevant to this appeal, Howell seeks various incident reports, medical records, and other information records pertaining to L.W., including the following:

> **Request for Production of Documents 2:**   Documents relative to [L.W.], including nursing home chart, medical records, physician notes, nurse statements and notes, progress notes, documentation of activities of daily living, assessment reports, incident/accident reports, physical therapy, administration of narcotics, dietary records, communications about [L.W.], etc.
>
> **Request for Production of Documents 5:**   Documents relative to [L.W.] including medical records, documentation of any incidents, police reports, and witness statements.

---

[1]This case was originally filed under a different case number in 2014.   Within the earlier case, Park East sought a protective order to bar the production of discovery responses.   The trial court denied the motion for a protective order and Park East appealed.   This court dismissed for lack of a final, appealable order because the judgment did not grant Howell's motion to compel and did not order Park East to produce any documents.   *See Howell v. Park E. Care & Rehab.,* 8th Dist. Cuyahoga No. 102111,   2015-Ohio-2403.

**Request for Production of Documents 6:** [L.W.'s] original nursing home chart during his entire residency.

**Request for Production of Documents 7:** Documentation of any incidents in which [L.W.] verbally and/or physically threatened, abused, assaulted, and/or otherwise attacked anyone at the nursing home.

**Request for Production of Documents 9:** Documentation in any incident, investigation, or abuse file which contains reference to [L.W.] or any incident involving or otherwise pertaining to [L.W.]

Request for Production of Documents 11: documentation reported to the Ohio Department of Health relative to [L.W.], including any reports of injuries of unknown origin or suspected abuse to that individual.

**Request for Production of Documents 14:** Billing that was sent out relative to [L.W.].

**Request for Production of Documents 15:** Documentation of amounts paid relative to [L.W.].

**Request for Production of Documents 20:** Incident reports and/or witness statements relative, in any way, to [L.W.].

**Interrogatory 5:** Identify and describe any and all instances in which [L.W.], at any time, verbally and/or physically threatened, abused, assaulted, battered, and/or otherwise attacked anyone in the building or on the premises of the nursing home, or exhibited any type of aggressive behavior. (Collectively referred to as "the disputed records").

{¶6} Park East filed a motion for a protective order, arguing that the disputed records are privileged under: R.C. 2317.02 (physician-patient privilege); R.C. 3721.13 (Ohio's Nursing Home Residents' Bill of Rights); Health Insurance Portability and Accountability Act of 1996 ("HIPAA");[2] R.C. 2305.252 (peer review privilege); and R.C. 2305.253 (incident report privilege). In opposition, Howell filed a motion to compel. Howell asserted that R.C. 3721.13

---

[2] 42 U.S.C. 1320d and 45 C.F.R. 164.512.

does not create a records privilege, R.C. 2317.02 is inapplicable because Howell is not seeking communications, that production of medical records pursuant to a court order does not violate HIPAA, and that the records are otherwise discoverable.

{¶7} The trial court conducted a legal analysis of the issues. Without conducting an in camera review of the disputed documents, the court ruled that the documentation of conduct is not barred by the physician-patient privilege, and that Howell's interests in obtaining the documents outweigh L.W.'s confidentiality interests. The court also ruled that R.C. 3721.13 does not create a records privilege, and that HIPAA is not violated if discovery is ordered by a court. The court granted Howell's motion to compel and denied Park East's motion for a protective order.

{¶8} Park East's first assigned error raises various privilege claims. We shall address each argument in turn.

## Standard of Review

{¶9} Although discovery orders are generally reviewed under an abuse of discretion standard, the issue of whether information sought is confidential and privileged from disclosure is a question of law that should be reviewed de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13. *Accord Schlotterer* at ¶ 13 (considering claim based upon R.C. 2317.02); *Large v. Heartland-Lansing of Bridgeport Ohio, L.L.C.*, 995 N.E.2d 872, 2013-Ohio-2877, ¶ 35 (7th Dist.)(considering claim based upon R.C. 3721.13); *Dauterman v. Toledo Hosp.*, 6th Dist. Lucas No. L-10-1167, 2011-Ohio-148, ¶ 10 (considering claims based upon R.C. 2317.02 and HIPAA); *Bailey v. Manor Care of Mayfield Hts.*, 2013-Ohio-4927, 4 N.E.3d 1071, ¶ 11 (8th Dist.) (considering claim based upon R.C.

2305.252 for peer review documents, and R.C. 2305.253 for risk management and incident reports).

R.C. 2317.02

**{¶10}** Park East argues that the records are privileged under R.C. 2317.02, and this privilege extends to third parties such as L.W. Park East asserts that the court's decision is erroneous, under *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, and *Bednarik v. St. Elizabeth Health Ctr.*, 7th Dist. Mahoning No. 09 MA 34, 2009-Ohio-6404. In opposition, Howell argues that this statute is inapplicable herein.

**{¶11}** Pursuant to R.C. 2317.02, a physician cannot testify "concerning a communication made to the physician * * * by a patient in that relation or the physician's * * * advice to a patient." The statute defines "communication" as "acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician or dentist to diagnose, treat, prescribe, or act for a patient." R.C. 2317.02(B)(5)(a).

**{¶12}** In *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 402, 1999-Ohio-115, 715 N.E.2d 518, the Ohio Supreme Court reviewed privilege claims after a hospital released patient medical information to a law firm in order to determine Supplemental Security Income eligibility, and possible payment to the hospital. The *Biddle* court held that "an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Id.* at paragraph one of the syllabus. The court also held:

> In the absence of prior authorization, a physician or hospital is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law

duty, or where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality.

*Id.* at paragraph two of the syllabus.   The court reasoned that "'[a]lthough public policy favors the confidentiality [of medical information], there is a countervailing public interest to which it must yield in appropriate circumstances.'"   *Id.* at 402, quoting *MacDonald v. Clinger*, 84 A.D.2d 482, 487, 446 N.Y.S.2d 801 (1982).

{¶13}   However, in *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, the Ohio Supreme Court held that its decision in *Biddle* did not create a right of discovery of confidential medical records of nonparties and did not permit the parents suing an abortion provider to obtain medical records of other patients.   The court stated, "[t]he balancing test in *Biddle* * * * applies only as a defense to the tort of unauthorized disclosure of confidential medical information and does not create a right to discover confidential medical records of nonparties in a private lawsuit."   *Roe* at paragraph one of the syllabus. Further "[a]ny such exception to the physician-patient privilege is a matter for the General Assembly to address."   *Id.* at ¶ 47.   *Accord Bednarik* (reversing a decision releasing nonparty's laboratory results).

{¶14} The *Roe* court also recognized that a number of cases improperly applied *Biddle* to discovery situations.   *Id.*   *Accord Cepeda v. Lutheran Hosp.,* 123 Ohio St.3d 161, 2009-Ohio-4901, 914 N.E.2d 1051.

{¶15}   In 2010, the Ohio Supreme Court recognized that the physician patient privilege does not provide an "absolute protection against disclosure of medical information."   *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 30.   In *Ward*, the plaintiffs sought discovery of a nonparty's (physician's) records to determine whether he was the source of the plaintiff's infection.   The court held that,"R.C. 2317.02(B) does not protect a

person from having to disclose his or her own medical information when that information is relevant to the subject matter involved in a pending civil action," and that "[a] potential tortfeasor cannot use his or her status as a nonparty to prevent discovery of information that could shed light on whether he or she is the actual tortfeasor." *Id*. at ¶ 28-29. In distinguishing *Roe*, the court stated:

> The medical records of the nonparties in *Roe* were not subject to discovery, because (1) R.C. 2317.02(B) prohibited the health-care provider from releasing them, (2) no statutory exception to the privilege applied, and (3) the nonparty patients had not expressly given their consent to the release of their records.

*Id*. at ¶ 31.

{¶16} In accordance with the foregoing case law, R.C. 2317.02(B) does not protect a nonparty from having to disclose his or her own medical information when that information is relevant to the subject matter involved in a pending civil action. *Ward.* The balancing test of *Biddle* applies only as a defense to the tort of unauthorized disclosure of information, and not a right to discover confidential information from the nonparty. Moreover, there is "no bright-line rule" that permits discovery of privileged medical documents of nonparties. *Skorvanek v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2014-00845, 2017-Ohio-2694, ¶ 23-24, 31. In *Storvanek*, an inmate sought discovery of a nonparty inmate's medical records in a lawsuit against the department of rehabilitation and correction alleging failure to prevent an attack upon Skorvanek. Following a detailed analysis of the controlling case law, and an in camera inspection of the documents, the court stated:

> neither *Biddle* nor *Roe* advances Skorvanek's contention that, as a matter of law, for purposes of discovery he is entitled to the confidential medical records of [the] nonparty to this action. * * * [Additionally,] *Ward* held * * * "that under the

circumstances of this case, R.C. 2317.02(B), the physician-patient privilege, does not preclude discovery of medical information from a patient."

*Id.* at ¶ 28-29.

## R.C. 3721.02

{¶17} Park East also asserts that the records are privileged under R.C. 3721.13, of the Nursing Home Patients' Bill of Rights. In opposition, Howell argues that this statute does not create a statutory privilege.

{¶18}   R.C. 3721.13(A) states in pertinent part:

(A)   The rights of residents of a home shall include * * *:

* * *

(10)   The right to confidential treatment of personal and medical records, and the right to approve or refuse the release of these records to any individual outside the home, except in cases of transfer to another home, hospital, or health care system, as required by law or rule, records.

{¶19}   In *Rothstein v. Montefiore Home*, 116 Ohio App.3d 775, 689 N.E.2d 108 (8th Dist.1996), this court held that the right granted under this provision is "enforceable through a civil action by 'any resident,'" and could not be asserted by the estate of a former resident. Additionally, we note that in *Large*, 2013-Ohio-2877, 995 N.E.2d 872, the court analyzed the reports provision of R.C. 3721.02 and held that it did not create a privilege or forbid discovery. *Id*. at ¶ 21.

## HIPAA

{¶20}   Park East next argues that discovery of the requested records is barred by HIPAA, and that it faces civil liability under HIPAA if it produces L.W.'s medical records. Howell maintains that disclosure is permitted under HIPAA when ordered during the course of a judicial proceeding.

**{¶21}** The key provisions of HIPAA establish the following prohibitions:

(a) [To knowingly:]

(1) [use or cause] to be used a unique health identifier;

(2) [obtain] individually identifiable health information relating to an individual; or

(3) [disclose] individually identifiable health information to another person[.]

**{¶22}** However, the HIPAA privacy regulation, 45 C.F.R. 164.512, allows disclosure of protected health information in the course of any judicial or administrative proceeding in response to a court order. *See Grove v. Northeast Ohio Nephrology Assoc. Inc.*, 164 Ohio App.3d 829, 2005-Ohio-6914, 844 N.E.2d 400, ¶ 22 (9th Dist.).

### R.C. 2305.252

**{¶23}** Park East asserts that under R.C. 2305.252, peer review committee records are not discoverable. In opposition, Howell maintains that this argument was not raised below, and, in any event, there is no evidence that the requested documents were prepared by, or for the exclusive use of, the nursing home's peer review committee.

**{¶24}** In this matter, although the peer review and incident report privileges were not briefed, these issues were raised in Park East's general objections to discovery.

**{¶25}** Under R.C. 2305.252,

Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider[.] * * * No individual * * * shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee.

**{¶26}** However, "Ohio courts have been adamant that merely labeling a committee * * * 'peer review' is insufficient to meet the burden of proving that the privilege applies." *Smith v.*

*Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 23 (8th Dist.). A party claiming the peer-review privilege, at "a bare minimum" must show that a peer-review committee existed and that it actually investigated the incident. *Id*. at ¶ 13. The party must also establish that the documents being sought were prepared by or for the use of a peer review committee. *Bailey,* 2013-Ohio-4927, 4 N.E.3d 1071, ¶ 26. Moreover, the documents or records are not completely outside the scope of discovery, and are available from the original source of the information. *Fravel v. Columbus Rehab. & Subacute Inst.*, 2016-Ohio-5807, 70 N.E.3d 1161, ¶ 15 (10th Dist.), citing *Doe v. Mt. Carmel Health Sys*., 10th Dist. Franklin No. 05AP-435, 2005-Ohio-6966, ¶ 16.

### R.C. 2305.253

{¶27} Park East next asserts that under R.C. 2305.253, incident reports are not discoverable. In opposition, Howell maintains that this argument was not raised below, and, in any event, the records were not incident reports prepared for the use of a peer review committee.

{¶28} R.C. 2305.25(D) defines an "incident report" or risk management report as "a report of an incident involving injury or potential injury to a patient as a result of patient care * * * , that is *prepared by or for the use of a peer review committee * * ** within the scope of the functions of that committee. (Emphasis added.)

{¶29} Under R.C. 2305.253(A), an incident report or risk management report is not subject to discovery in, and not admissible in evidence in the trial of, a tort action, and the individual who prepares such report shall not be required to testify in a tort action as to the contents of the report.

{¶30} Only a document prepared by, or for the use of a peer review committee is deemed an "incident report" and is considered privileged and nondiscoverable. *Manley v. Heather Hill,*

*Inc.*, 175 Ohio App.3d 155, 2007-Ohio-6944, 885 N.E.2d 971, ¶ 27 (11th Dist.). In order to invoke this privilege, the party claiming the privilege must show that it had a peer review committee, the peer review committee investigated the matter, and the documents sought were incident reports prepared for use by a peer review committee. *Id*. at ¶ 22. *Accord Rinaldi v. City View Nursing & Rehab. Ctr., Inc.*, 8th Dist. Cuyahoga No. 85867, 2005-Ohio-6360, ¶ 20-22.

### Department of Health Licensing Reports under R.C. 3721.17

**{¶31}** Park East next argues that the requested records include reports issued for the Department of Health and are not discoverable under R.C. 3721.02. In opposition, Howell asserts that inspection and investigation reports may not be used in court, but are still discoverable.

**{¶32}** R.C. 3721.02(F) provides that:

[T]he results of an inspection or investigation of a home that is conducted under this section, including any statement of deficiencies and all findings and deficiencies cited in the statement on the basis of the inspection or investigation, shall be used solely to determine the home's compliance with this chapter, [and such statement and findings] shall not be used in * * *

Any court or in any action or proceeding that is pending in any court and are not admissible in evidence in any action or proceeding unless that action or proceeding is an appeal of an action by the department of health under this chapter[.]

**{¶33}** In *Large,* 2013-Ohio-2877, 995 N.E.2d 872, the court extensively analyzed this provision and held that it does not create a statutory privilege protecting the reports from discovery, but is instead an evidence exclusion provision.

### In Camera Review

{¶34} In applying the foregoing to this matter, we note that the trial court did not require Park East to produce the documents for an in camera review. As this court noted in *Dubson v. The Montefiore Home*, 8th Dist. Cuyahoga No. 97104, 2012-Ohio-2384, the "blanket release of all medical and financial records" was unreasonable. *Id.* at ¶ 18. Moreover, an in camera document review for relevancy and privilege is considered the "best practice." *See Sessions v. Sloane*, 789 S.E.2d 844, 856 (N.C. Ct. App. 2016). *Accord Doe v. Mt. Carmel Health Sys.*, 10th Dist. Franklin No. 03AP-413, 2004-Ohio-1407. The *Doe* court held that the in camera review has been deemed the most appropriate way to determine if a privilege applies. *Id.* at ¶ 12. The trial judge may make the necessary determination without compromising the confidentiality of any information found to be privileged. *Id.* at ¶ 13. This practice also creates a complete record that would allow this court to conduct a meaningful review of whether a privilege is applicable to the documents at issue. *Id.*

{¶35} In *Trangle v. Rojas*, 150 Ohio App.3d 549, 556, 2002-Ohio-6510, 782 N.E.2d 617 (8th Dist.), this court held that the trial court erred in ordering "complete" responses to the second set of interrogatories and request for production of documents without first conducting an in camera inspection to determine the privileged matters. Similarly, in *Johnson ex rel. Estate of Johnson v. Univ. Hosps. of Cleveland*, 8th Dist. Cuyahoga No. 80117, 2002-Ohio-1396, this court held that the trial court erred by compelling the disclosure of the incident reports in toto without conducting an in camera inspection of the records. Additionally, in *Bailey*, 2013-Ohio-4927, this court held that the issue of whether or not the requested records fall within the purview of the peer review privilege is a decision best determined by an in camera review of the documents. *Id.* at ¶ 37. The *Bailey* court also outlined the in camera procedure. *Id.* at ¶

38, citing *Cleveland Clinic Health Sys.-E. Region v. Innovative Placements, Inc.*, 283 F.R.D. 362, 365 (N.D.Ohio 2012).

**{¶36}** In accordance with all of the foregoing, we conclude that the trial court's blanket order to provide discovery of all of the disputed records, without an in camera review, was erroneous. We conclude that the disputed documents must be analyzed in the first instance by the trial court for each of the privilege claims, as well as for relevancy. Additionally, we caution that even if the trial court again concludes, following an in camera review, that the documents must be produced, information concerning other patients as well as social security numbers and other sensitive information must still be redacted from the records. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

**{¶37}** The court's judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
PATRICIA ANN BLACKMON, JUDGE

MELODY J. STEWART, J., CONCURS;
EILEEN T. GALLAGHER, P.J.,
CONCURS IN JUDGMENT ONLY
WITH SEPARATE OPINION ATTACHED

EILEEN T. GALLAGHER, P.J., CONCURRING IN JUDGMENT ONLY:

{¶38} I concur with the majority's decision to remand this matter for the trial court to conduct an in camera review of the disputed documents. However, I write separately to address my belief that the trial court's judgment improperly relied on the Ohio Supreme Court's decision in *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, for the proposition that the medical records sought from the nursing home were not absolutely privileged under R.C. 2317.02(B).

{¶39} Civ.R. 26(B) states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." "Medical records are generally privileged from disclosure under R.C. 2317.02(B)(1)," known as the physician-patient privilege. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 14. The statute states that a "physician, advanced practice registered nurse, or dentist" cannot "testify" about a "communication" made to one of those people. R.C. 2317.02(B)(1). The definition of "communication" includes medical records. R.C. 2317.02(B)(5)(a).

{¶40} In an effort to address the trial court's reliance on *Ward*, a summary of relevant Ohio Supreme Court cases is necessary. As referenced by the majority, in *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 715 N.E.2d 518 (1999), paragraph two of the syllabus, the Ohio Supreme Court held:

> In the absence of prior authorization, a physician or hospital is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protect or further a countervailing interest that outweighs the patient's interest in confidentiality.

*Id.* at 402.

{**¶41**} Approximately ten years after *Biddle* was released, the Ohio Supreme Court issued *Roe v. Planned Parenthood Southwest Ohio Region*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, to clarify its decision in *Biddle*. *Roe* at paragraph one of the syllabus. In *Roe*, the plaintiffs sought medical records of nonparties from a health-care provider. Relying on *Biddle*, the plaintiffs claimed that disclosure of the medical records was necessary to protect or further a countervailing interest that outweighed a patient's interest in confidentiality. *Id.* at ¶ 46. No one disputed R.C. 2317.02's applicability; the *Roe* plaintiffs sought medical records from a health-care provider. *Id*. at ¶ 26. Instead, the question was whether to apply the exception to the privilege that had been created in *Biddle*.

{**¶42**} After careful consideration, the Ohio Supreme Court rejected plaintiffs' reliance on *Biddle*, stating,

> paragraph two of the syllabus in *Biddle* addressed the defenses to the tort of unauthorized disclosure of confidential medical information — i.e., the circumstances under which a physician or hospital may release confidential medical records in the absence of a waiver without incurring tort liability. *Biddle did not create a litigant's right to discover the confidential medical records of nonparties in a private lawsuit.* Any such exception to the physician-patient privilege is a matter for the General Assembly to address.

(Emphasis added.) *Id.* at ¶ 48.

{**¶43**} Thus, the Ohio Supreme Court held that R.C. 2317.02 prevents a litigant from "discover[ing] the confidential medical records of nonparties." *Id.* at ¶ 48. "The balancing test in *Biddle* applies only as a defense to the tort of unauthorized disclosure of confidential medical information and does not create a right to discover confidential medical records of nonparties in a private lawsuit." *Id.* at paragraph one of the syllabus.

{¶44} Based on the unambiguous language expressed in *Roe*, I would find *Biddle* does not advance the trial court's contention that appellee is entitled to the privileged medical records of L.W., a nonparty to this action. Because this case does not involve a defense to the tort of unauthorized disclosure of confidential medical information, the trial court's reliance on the balancing test expressed in *Biddle* was misplaced.

{¶45} In a further effort to avoid the ramifications of *Roe* and R.C. 2317.02(B), the trial court's decision relied extensively on the Ohio Supreme Court's decision in *Ward*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514. In *Ward*, the plaintiff sought discovery of a nonparty-physician's personal medical records to determine whether he was the source of the plaintiff's infection. "The issue for [the court's] review concern[ed] the patient's ability to obtain discovery to determine the source of his exposure." *Id.* at ¶ 1. The court noted that the testimony was being sought from the surgeon about his own medical information in his capacity as a patient, not in his capacity as a physician. *Id.* at ¶ 26. The court held that in construing the statutory privilege strictly, it does not protect a patient from disclosing *their own* medical information when relevant to the subject matter of the action. (Emphasis added.) *Id.* at ¶ 27. In distinguishing *Roe*, the court stated:

> The medical records of the nonparties in *Roe* were not subject to discovery, because (1) R.C. 2317.02(B) prohibited the health-care provider from releasing them, (2) no statutory exception to the privilege applied, and (3) the nonparty patients had not expressly given their consent to the release of their records.

*Id.* at ¶ 31.

{¶46} In its July 2017 order, the trial court acknowledged that the plaintiff in *Ward* "sought a potential tortfeasor's own testimony about his health records," while in this case, appellee "is asking the nursing home to produce a third party's medical records." Nevertheless, the trial court found *Ward* persuasive, stating:

Despite these differences, *Ward* ultimately stands for the proposition that a third party's medical records are not subject to an absolute privilege.

**{¶47}** After careful consideration, I would find the trial court's interpretation of *Ward* ignores the longstanding precedent of *Roe*. Contrary to the trial court's position*, Ward* only applies to factual situations where the medical information is requested from *the patient* — not the medical facility or physician. *Ward* is clearly distinguishable from the facts of this case. Unlike *Ward*, this case involves an order requiring *the nursing home* to produce the records of one of its patients who is not a party to this case. As such, this case presents a factual scenario analogous to *Roe* and falls directly under the protections afforded under R.C. 2317.02(B). While I agree that *Ward* states that the physician-patient privilege does not provide an "absolute protection against disclosure of medical information," the exception is narrow and factually driven. Thus, I disagree with the trial court's reliance on *Ward*. This case does not contemplate a request from the nonparty patient to disclose his or her own medical information. Therefore, *Ward* is not implicated.

**{¶48}** Based on the foregoing, I would apply the Ohio Supreme Court's express determination that R.C. 2317.02 prevents a litigant from "discover[ing] the confidential medical records of nonparties." *Roe*, 122 Ohio St.3d 399, 2009-Ohio-2973, 912 N.E.2d 61, at ¶ 48.

**{¶49}** Accordingly, I would find the trial court erred in determining that the nursing home was required to produce information concerning or involving L.W.'s medical records. With that said, however, I agree that an in camera review is necessary to determine which documents qualify as medical records.